[Civ. No. 18976.   First Dist., Div. Two.   July 12, 1960.]

PETER ZUNINO et al., Respondents, v. WILLIAM
GABRIEL et al., Appellants.

614

Douglas G. Cowan and Cowan & Wright for Appellants.

Forrest H. Bailey and Bray, Baldwin & Ogden for Respondents.

GOOD, J. pro tem.*—Plaintiffs, respondents, herein, recovered judgment against defendants Gabriel and Simpkins, appellants, decreeing that plaintiffs are the owners of an easement for road purposes, 20 feet in width and traversing properties of defendants and enjoining them from interfering with its use. The respondents were the owners of the northern portion of Lot 35 as shown on Burgess' Map Number 1, Mac-Donough Subdivision, in Walnut Creek. Appellant Gabriel owned the adjacent Lot 24 which he subdivided and Simpkins became the owner of one of the subdivided lots. Respondents went into possession of Lot 35 in 1939 as tenants of one Bedell who then owned both Lots 35 and 24. At that time, respondents began the daily use of a roadway across said Lot 24 for both family and business purposes, including ingress and egress for their 26 garbage trucks. Two years later, respondents contracted for the purchase of the property theretofore leased by them. The contract of sale included a right of way over said Lot 24 to Alvarado Road. Respondents testified that they did not use the right of way designated in the contract but continued to use the one theretofore used because the latter was more convenient. In 1945, the contract price being paid, respondents received their deed. Though not introduced in evidence, both counsel state it made no mention of the easement granted in the sales contract. Bedell sold Lot 24 to one Marchetto in 1944. Shortly thereafter, he deeded it to his aunt, Mrs. Gastaldo, who sold to appellant Gabriel in 1955. Thereafter, appellant Gabriel subdivided Lot 24 and defendants Simpkins purchased a lot therein.

In 1954, Mr. Gastaldo approached respondents with a request to move the right of way 10 feet southerly for about half its length so that the southerly line of the road would coincide with the southerly line of Lot 24. Respondents consented and Gastaldo arranged and paid for the removal

*Assigned by Chairman of Judicial Council.

of trees and grading the relocated road. Respondents then gravelled the road and thereafter continued their daily use thereof in the same manner as before. While there is conflicting evidence as to the purport of the negotiations between the parties for relocation of the road the express findings of the trial court in accordance with the foregoing statement are supported by the record.

The evidence also shows that at all times the original subdivision maps showed a public road designated as Overlook Drive running along the southwesterly line of respondents' property. This road was not opened or improved until some three years before the trial. It also appears that in 1957 appellant Simpkins placed a fence across the road where it traversed his subdivided lot. Thereupon, respondents filed this quiet title action, secured a temporary injunction restraining Simpkins from interfering with their right of way, and eventually recovered the judgment that is the subject of this appeal.

The principal question involved on this appeal is whether as claimants of a prescriptive right respondents met their burden of proving the elements necessary to establish their title by evidence sufficiently conclusive to overcome the presumptions that occupancy by a claimant is deemed in subordination to the legal title; that all rights in and to land are vested in the record owner; and, that the use of it is by express permission or by silent acquiescence. (*Los Angeles Brick etc. Co.* v. *City of Los Angeles,* 60 Cal.App.2d 478 [141 P.2d 46].) ■ But whether the use of an easement was adverse or permissive is a question of fact and where there is any substantial evidence to support a finding of adverse hostile use for the required period a judgment must be affirmed. (*Pratt* v. *Hodgson,* 91 Cal.App.2d 401 [204 P.2d 934]; *Sevenman* v. *Long Bell Lumber Co.,* 129 Cal. App.2d 528 [277 P.2d 510].) A review of the evidence herein discloses that each of the elements necessary to establish title by prescription was supported by substantial evidence.

■ Appellants contend that the respondents had or claimed an easement by necessity until 1954, and therefore the prescriptive period could not have begun until that time. *Martinelli* v. *Luis,* 213 Cal. 183 [1 P.2d 980] is cited for the rule that where there is an easement by necessity prescriptive rights therein cannot accrue. In that case, there was a finding by the trial court that an easement was both prescriptive and by necessity. The Supreme Court held that such inconsistent findings could not stand. In the instant case, the

basis for the argument that an easement by necessity existed is a statement by respondent Peter Zunino on cross-examination that the right of way in issue was the only way "you can get in" to the property. However, the record discloses that respondent had a language difficulty and it is not clear that he meant that ingress and egress could not be had by any other route. Elsewhere, he testified that he used the particular road because it was the most convenient. Further, under the original contract of sale he had a right across Bedell's property by another route. If it can be said that the isolated statement constituted an admission against interest or otherwise created a conflict in the evidence, its weight and effect was for the trier of the facts. ▆ Mere use of a route for convenience does not give rise to an easement by necessity (*Carey* v. *Rae*, 58 Cal. 159). ▆ To be an easement by necessity, a route must in fact be the only possible means of access (*Lapique* v. *Morrison*, 29 Cal.App. 136 [154 P. 881]). The test is one of strict necessity and the fact that another way is too steep, too narrow or other or like difficulties exist does not alter the rule unless such difficulties cannot be overcome and it appears that the claimant of an easement by necessity has, in fact, no other way. (*Corea* v. *Higuera*, 153 Cal. 451, 454 [95 P. 882, 17 L.R.A. N.S. 1018].)

▆ The fact that Overlook Drive, though undeveloped, provided access to respondents' property is but one aspect of the evidence that precluded a characterization of the right of way in issue as an easement by necessity. Respondents had a right to use Overlook Drive prior to its improvement since it was delineated on the original subdivision map. (*Hocking* v. *Title Ins. & Trust Co.*, 37 Cal.2d 644 [234 P.2d 625, 40 A.L.R.2d 1238].)

▆ Appellants next contend that no prescriptive rights could accrue because the use was permissive as a matter of law at its inception and, therefore, could not become adverse unless and until there was an express repudiation (*Brandon* v. *Umpqua Lumber etc. Co.*, 26 Cal.App. 96 [146 P. 46]). It is argued that because the initial relationship between appellants' predecessor (Bedell) and respondents was that of landlord and tenant, the landlord had a duty to put respondents into possession and a permissive right of access is necessarily implied. Appellants cite Civil Code, section 1927 and 17 California Jurisprudence 2d, Easements, section 21. The code section and the cases arising thereunder deal with the obligation of a landlord to defend a tenant's pos-

session of rented property against third persons lawfully claiming the same. Granting that the original use may have been under license arising out of the landlord-tenant relationship, the relationship was changed by the contract of sale in 1941, two years after the inception of the lease. The testimony is undisputed that no discussions about the use of the road were had at the time of the sale and that its use continued, despite the fact that the contract expressly provided for another route. It is from this time that respondents claim their adverse use and the evidence, including burdensome nature of the use and the fact that the eventual deed by which the contract of sale was consummated did not include the other right of way parcel, supports the inference that the use was without permission. ▮▮ Whether user is adverse or permissive is a question of fact to be determined in the light of all of the evidence. ▮▮ There is substantial evidence to support the finding of the trial court.

▮▮ The appellants contend that in 1954, when the right of way was moved, the respondents acquiesced in the owner's right of control, thus negating even a belief on respondents' part that they had any prescriptive right to the easement. Again, the argument is addressed to the facts. The issue turns on the interpretation of a conversation between Mr. Gastaldo, the husband of the then owner of Lot 24, and respondent Peter Zunino concerning the change of the location of the right of way. In contradiction to appellants' claim, the evidence, including that adduced by appellants, may reasonably be construed to show that it was Gastaldo who recognized respondents' right to control the location of the easement. All reasonable inferences must be indulged in to support the judgment of the trial court. (*Crawford* v. *Southern Pacific Co.* (1935), 3 Cal.2d 427 [45 P.2d 183].) The circumstances do not warrant this court on review to hold that there was any recognition by respondents of the owner's right to control the location of the right of way, which might negative their prescriptive claim. In connection with the same transaction, appellants contend that from 1954 a new right of way has been in use because the road was shifted by some 10 feet, and that a new prescriptive period commenced at the time of relocation. ▮▮ The law is that if by mutual consent the owners of dominant and servient tenements substitute a new route for an easement any rights theretofore existing are not affected by the change but attach to the new location. (*Vargas* v. *Maderos* (1923), 191 Cal. 1 [214 P. 849]; *Conner* v. *Lowery* (1928), 94 Cal.App. 323 [271 P. 118].)

In view of the foregoing, it is apparent that the trial court did not err in finding a prescriptive easement.

█ The appellants claim the evidence is insufficient to support the finding that the easement was 20 feet wide. It is true that the land occupied and none other will be deemed to be held adversely (Code Civ. Proc., § 324), and the extent of a servitude is determined by the nature of its acquisition (Civ. Code, § 806). Also, the claimant has the burden of establishing the nature and extent of a prescriptive easement (*Bartholomew* v. *Staheli* (1948), 86 Cal.App.2d 844 [195 P.2d 824]). The crux of defendants' contention is testimony to the effect that at one point the right of way is only 17 feet wide where an abutment was constructed in connection with the resubdivision of Lot 24. This condition has existed since 1955, and appears to have been caused by a wrongful interference with respondents' right of way, as to which the prescriptive period had already been perfected. The evidence adequately demonstrated that the easement was at least 20 feet wide, except in the area of the abutment. The existence of this encroachment does not destroy the prescriptive right to the remainder of the easement.

█ Another of appellants' contentions requires brief comment. At the conclusion of the testimony, respondents' counsel, relying upon consent to said relocation and expenditures made by them in rolling and gravelling the relocation, moved to amend the pleadings to conform to proof by adding a new count to include a claim of easement by estoppel. After considerable discussion, it was agreed that the amendment would be considered filed and its allegations deemed denied without the necessity of filing corresponding pleadings. Appellants contend that the court erred in permitting such amendment because the amendment constituted a new cause of action which is inconsistent with and negates the claim of a prescriptive easement. We need not determine that issue at this time because the findings and judgment, though reciting the informal addition of an estoppel cause of action, cannot be construed to establish an easement other than by prescription. Since the recent amendments to sections 632 and 634 of the Code of Civil Procedure, complaint may not now be made of lack of findings on the estoppel issue because respondents failed to make a written request therefor prior to entry of judgment, nor may the claim be made that the existence of the additional cause of action permitted by informal amendment rendered the specific findings of adverse

use inconsistent or even ambiguous. ██ Further, where findings are made on all of the material issues which determine a cause other issues become immaterial and a failure to find thereon does not constitute prejudicial error. (*Leonard* v. *Fallas,* 51 Cal.2d 649 [335 P.2d 665]; *Virtue* v. *Flynt,* 164 Cal.App.2d 480 [330 P.2d 879].)

Judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.