[Civ. No. 21585. First Dist., Div. One. June 23, 1964.]

FREDERICK W. BUECHNER et al., Plaintiffs and Appellants, v. ANNA H. JONAS, Defendant and Respondent.

J. Rainey Hancock for Plaintiffs and Appellants.

Park Chamberlain for Defendant and Respondent.

BRAY, P. J.—In an action to quiet title plaintiffs and cross-defendants appeal from decree quieting title in favor of defendant and cross-complainant.

### QUESTION PRESENTED.

Did defendant abandon her easement?

### RECORD.

On October 2, 1953, defendant and her husband (now deceased) acquired title to certain residence property in

Saratoga, California, and to "a non-exclusive easement for ingress and egress and for public utilities" in a 30-foot strip of land fronting on said property. Said strip is known as Bella Vista Avenue.[1] In the year 1954, defendant caused a certain hedge to be planted in said strip which hedge has ever since been maintained there. Defendant believed that such hedge would beautify the appearance of the neighborhood and enhance the value of defendant's and the adjoining property, and would not interfere with the use of the strip for ingress and egress and public utilities by defendant and the other owners of the nonexclusive easement.

There was evidence that both the paved and unpaved portions of the strip were used by defendant, her family and others, for automotive, bicycle and pedestrian traffic, thus using the strip on both sides of the hedge.

In 1959 plaintiffs acquired residence property northeasterly and across the strip from defendant's property and a nonexclusive easement in said strip for the above mentioned purposes. The beauty of the hedge was one of the inducements for their purchasing the residence property. In May 1959 plaintiffs, who theretofore had a nonexclusive easement similar to defendant's in said strip, acquired the fee title thereto subject to defendant's easement.[2] The hedge adjoined the paved portion of the strip. In 1961 plaintiffs extended the hedge to and beyond plaintiffs' property line, blocking defendant's use of a small portion of the easterly end of the strip, should defendant desire to drive over it. A dispute arose between the parties over their respective rights in the strip. Plaintiffs on May 31, 1961, sued to quiet title to the strip. Defendant answered and cross-complained alleging ownership of said easement for ingress and egress and for public utilities, and asked that the rights of the parties in the strip be declared.

The court found in effect that the planting and maintenance of the hedge by defendant was without any intent on

---

[1] Dr. Jonas, defendant's husband, died in 1957, and defendant became the sole owner of the easement. The planting and maintaining of the hedge hereafter mentioned and the use of said easement were by both defendant and Dr. Jonas until his death. We are using "defendant" herein to cover the activities of both up to the time of his death and Mrs. Jonas' activities thereafter.

[2] In September 1960 defendant sold a portion of her property to one Bloom granting him nonexclusive rights in said easement, but not releasing her rights therein. Bloom is not a party to this action.

the part of defendant to interfere with plaintiffs' rights in the strip, but was purely ornamental and temporary and can be removed at any time with but slight effort; that the maintenance of the hedge is not incompatible with said easement.

The court entered a decree determining that defendant is the owner of "a non-exclusive easement for ingress and egress and for public utilities" in the described strip and enjoined plaintiffs "from interfering directly or indirectly with defendant's use of said easement." The decree also ordered plaintiffs to remove "any shrubbery planted by them on said easement." This has been done.

The pretrial conference order provides in effect that the issue between the parties is whether by the planting and maintaining of the hedge, defendant had abandoned her easement east of the easterly edge of the driveway. The order expressly states: "Plaintiffs are not making any claim to an easement west of the easterly edge of the driveway and the Bloom property [the property sold by defendant], for the entire width." "Plaintiffs are asking that title be quieted to that portion of the easement that is south of the hedge and east of the driveway." The order further states: "Defendant is asking therefore, that any claim of ownership by plaintiffs be subordinate to defendant's use of the right of way as described in the deed to which defendant acquired title."

At the trial, additionally to that issue, namely, whether by reason of the planting and maintenance of the hedge by defendant, servitude in defendant's property (the strip), i.e., the easement, had been extinguished.[3] Plaintiffs contended that because of the planting and maintenance of the hedge by defendant, she, in any event, had limited her easement to that portion of the strip lying on either side of the hedge. Defendant raised an additional issue, namely, the effect of the extension of the hedge by plaintiffs so as to block defendant's use of that portion of the strip.

In 1961, plaintiffs extended the hedge from the northeasterly edge of the hedge planted by defendant to and beyond plaintiffs' property line. It was this extension which the judgment required to be removed and which has been

[3]As stated in the pretrial conference order, "Plaintiffs are relying on section 811, subsection 3, of the Civil Code. ..." That section provides: "a servitude is extinguished: . . . 3. By the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise. . . ."

removed. This portion of the judgment is not questioned by plaintiffs.

On motion for new trial plaintiffs requested the court, in the event it did not grant a new trial, to amend the judgment to declare their respective rights in the maintenance of the hedge. The court denied the motion both for a new trial and the requested declaration of rights.

■ Defendant did not claim any right to maintain the hedge. The effect of the judgment decreeing defendant's easement in the whole strip and enjoining plaintiff's interference with that easement, obviously means that plaintiffs may not maintain the hedge if it interferes with that easement. Thus, all issues which had been presented at the trial were determined by the judgment. Therefore, the court did not abuse its discretion in refusing a new trial.

As will hereinafter appear, the court properly determined that defendant did not abandon her easement nor did her acts cause the easement to be extinguished.

### DID DEFENDANT ABANDON SAID EASEMENT?

■ Plaintiffs' main contentions are that the right to plant a hedge is not included in an easement for ingress and egress and for the public utilities, and by planting such hedge (1) defendant abandoned her easement, or (2) that in any event defendant, by maintaining the hedge, had lost her right to use that portion of the easement and that defendant may not remove it, but that plaintiffs can.[4]

■ Where an easement is created by grant, extinguishment by abandonment is effected by the concurrence of at least the first two of three elements: (1) nonuser; (2) intention to abandon; and (3) damage to the owner of the servient estate. (17 Cal.Jur.2d, Easements, § 6, p. 144; *Smith* v. *Worn* (1892) 93 Cal. 206, 212 [28 P. 944]; *Nevada Irrigation Dist.* v. *Keystone Copper Corp.* (1964) 224 Cal.App.2d 523, 532 [36 Cal.Rptr. 775]; cf. *Lake Merced Golf & Country Club* v. *Ocean Shore R. R. Co.* (1962) 206 Cal.App.2d 421, 436-437 [23 Cal.Rptr. 881], hearing denied.) ■ Whether the owner of the dominant tenement intended to abandon it is a question of fact. (*Smith* v. *Worn, supra,* at p. 213; see also *Lake Merced Golf & Country Club* v. *Ocean Shore R.R. Co., supra,* at p. 437; *Flanagan* v. *San Marcos Silk Co.* (1951)

---

[4]It is interesting to note that neither party wants the hedge removed at this time. Both state that its presence enhances the value of their respective residences.

106 Cal.App.2d 458, 463 [235 P.2d 107] ; 25 A.L.R. 2d 1286, § 6, 1289, § 9.) An easement created by grant cannot be lost by nonuser alone. (17 Cal.Jur.2d, Easements, § 36, p. 144, and cases there cited; 25 A.L.R.2d 1265, 1279.) The trial court found that defendant and her husband never intended to abandon the easement. There is more than ample evidence to sustain this finding.

In *Pitcairn* v. *Harkness* (1909) 10 Cal.App. 295 [101 P. 809], hearing denied, the grantor conveyed a portion of a tract of land to his wife ''reserving therefrom a strip of land twenty-five feet wide off the east side for street purposes.'' (P. 297.) He thereafter contracted to sell a parcel lying east of the land previously conveyed. The court held that the reservation was of an easement. The court stated that cultivation of that parcel by the grantor's successor in interest would not amount to an abandonment of his right of way. (P. 299.)[5]

 An easement may be extinguished by performance of any act by the owner of the easement on either the dominant or servient estate which is incompatible with the nature or exercise of the easement. (Civ. Code, § 811, subd. 3.) The courts have interpreted this incompatibility as necessitating a *permanent* interference or an act of a nature such that thereafter exercise of the easement cannot be made without severe burden upon the servient tenement. (*Lux* v. *Haggin* (1886) 69 Cal. 255, 292-293 [4 P. 919, 10 P. 674] ; *Fletcher* v. *Stapleton* (1932) 123 Cal.App. 133, 137-138 [10 P.2d 1019] ; *Keller* v. *City of Oakland* (1921) 54 Cal.App. 169, 173 [201 P. 618] ; *McCarty* v. *Walton* (1963) 212 Cal.App.2d 39, 45 [27 Cal.Rptr. 792] ; see generally 17 Cal.Jur.2d, Easements, § 39, pp. 148-149.)

There apparently are no cases in California or any discussion of the extent to which the owner of an easement of way can, consistently with the rights of the owner of the fee and any other easement holders, beautify or otherwise improve the easement. However, there are a few recent cases which may be applied by analogy. In *McCarty* v. *Walton, supra,* 212 Cal.App.2d 39, the plaintiffs purchased a parcel of land from one Jones in 1938. There was no access to the property except a rutted road off Hill Road and across the

---

[5]It is not clear from the opinion whether this was simply dicta or whether the grantor or his successor had actually cultivated the parcel in question. Subsequent courts and writers have construed it as one of the facts of the case.

remaining portion of the Jones property which access Jones had indicated to the plaintiffs prior to their purchase of the original parcel. Thereafter, the plaintiffs bought other surrounding property. Jones again indicated that access could be had across his land even though there was a poorly defined and little used private road adjacent to the northern parcel of the recently acquired property. The plaintiffs made other purchases of property and ultimately acquired a parcel which included a road off United States Highway 40, though this road did not go all the way to the plaintiffs' residence. From the time of the original purchase until 1958 the plaintiffs, deliverymen, and guests used this right of way and another access. In 1958 the plaintiffs erected a stone wall across this right of way. Thereafter, the plaintiffs and others used a portion of the original right of way off Hill Road to the wall, then turned right to reach a gate constructed in the southeast portion of the wall, where they parked their cars and walked the remaining way to the plaintiffs' house. In June, the defendant, who had inherited the remaining Jones property, blocked off the original right of way. The court found an easement by implication. The defendant, however, contended that the easement was extinguished by the building of the rock wall, citing Civil Code section 811, subdivision 3, and *Crimmins* v. *Gould, infra.* The court held that leaving the gate in the wall was inconsistent with any intent to abandon the easement and consistent with an intent to continue to exercise dominion thereover. Since there was no increase in the use of the easement the court did not have to determine whether there was any severed portion of the use. The issue was properly a question of fact left to the jury.

In *Crimmins* v. *Gould* (1957) 149 Cal.App.2d 383 [308 P.2d 786], the court held an easement abandoned by misuse. In 1926, one McCormick conveyed parcel one, together with an easement of right of way for ingress and egress, to a predecessor of the defendants. At that time parcel one and an adjoining parcel were planted in orchard. In 1954 the defendants subdivided parcel one and the adjoining parcel into 29 residential lots, six of which were on parcel one. The defendants put through roads connecting these lots on parcels one and two (which had no easement) with McCormick Lane and with another road on the other side of the parcels. The trial court found that the defendants' acts were incompatible with the nature and exercise of the servitude appurtenant to parcel one and that it was impossible to use the

easement granted in 1926 as it was intended. The court stated the rule with respect to such forfeiture as follows: "The general rule is that misuse or excessive use is not sufficient for abandonment or forfeiture, but an injunction is the proper remedy. (16 A.L.R.2d 610.) But where the burden of the servient estate is increased through changes in the dominant estate which increase the use and subject it to use of non-dominant property, a forfeiture will be justified if the unauthorized use may not be severed and prohibited. [Citations.]" (P. 391.) The court continued that if the subdivision of parcel one was the only infringement, the easement would extend to those lots. "It is not a question of merely 'some increase in burden' upon a servient tenement by permitting an easement appurtenant to attach to each of the parts into which a dominant tenement may be subdivided. . . . Rather it is one of the performance of acts by the owner of the servitude 'which is [sic] incompatible with its nature or exercise.' " (P. 391.)

The court noted with approval the rule stated in 28 Corpus Juris Secundum 729: "The right to an easement is not lost by using it in an unauthorized manner or to an unauthorized extent, unless it is impossible to sever the increased burden so as to preserve to the owner of the dominant tenement that to which he is entitled, and yet impose on the servient tenement only that burden which was originally imposed on it without the obligation attempted to be imposed on it by alterations."

The planting and maintenance of the temporary hedge in this case did not constitute either an abandonment or misuse of the easement. Nor, under the circumstances of this case did such temporary hedge become such a fixture to the land as to give the owner of the fee the right to prevent its removal if it interfered with the reasonable use by defendant of her easement. The hedge was planted and maintained without any intention of its becoming a permanent fixture. The decree is clear. None of defendant's acts has diminished in any way defendant's right to her easement for ingress and egress and public utilities and plaintiffs are enjoined from interfering with those rights. Obviously thereby plaintiffs may not insist on the maintenance of any hedge which would interfere with said rights. On the other hand, defendant may not, over the objection of plaintiffs, maintain any hedge.

The decree is affirmed.

Sullivan, J., and Molinari, J., concurred.